IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESSA KELLEY, an individual, ) | CV F 10 – 1294 AWI JLT |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION |
| ) | AND ORDER ON |
| v. ) | DEFENDANTS' MOTION TO |
| ) | DISMISS PLAINTIFF'S FIRST |
| CORRECTIONS CORPORATION OF ) | CLAIM FOR RELIEF AND |
| AMERICA, and DOES 1 through 50, ) | CLAIMS FOR PUNITIVE |
| inclusive, ) | DAMAGES |
| ) | |
| Defendants. ) | Doc. # 33 |
| _____) | |

This is an action in diversity for damages under California's Fair Employment and Housing Act ("FEHA") by plaintiff Teressa Kelley ("Plaintiff") against Defendant CCA of Tennessee, LLC ( "Defendant"). On September 30, 2010, the court filed a memorandum opinion and order dismissing Plaintiff's first claim for employment discrimination in violation of Cal. Gov't Code § 12940(a), and Plaintiff's fourth claim for retaliation in violation of Gov't Code § 1240(h). Both claims were dismissed with leave to amend. In addition, the court dismissed Plaintiff's prayer for punitive damages, which was alleged with respect to each claim for relief. On October 18, 2010, Plaintiff filed her First Amended Complaint ("FAC"). In the instant motion, Defendant seeks dismissal Plaintiff's first claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismissal of Plaintiff's amended claims for punitive damages. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Venue is proper in this court.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In its memorandum opinion and order filed September 30, 2010, (the "September 30 Order") the court set forth the factual background of Plaintiff's complaint. Plaintiff's FAC expands, but does not contradict, the allegations made in the original complaint. The general background facts alleged in the original complaint and recounted in the September 30 Order need not be repeated here. Because Defendant's instant motion seeks dismissal of only Plaintiff's first claim for relief for unlawful discrimination based on physical disability, the court will focus only on those factual allegations that relate to Plaintiff's first claim for relief, and in particular those facts that are alleged in the FAC that were not alleged in Plaintiff's original complaint. Plaintiff's allegations with regard to punitive damages will be set forth *infra* in the section of this order discussing that issue. All allegations set forth in the FAC are taken as true for purposes of this analysis.

There is no dispute that Plaintiff was employed by Defendant in 2002 as a Count Clerk at the California City Correctional Center, a California correctional institution owned and operated by Defendant. It is also not disputed that, following carpal tunnel release surgery in 2007, Plaintiff experienced increasingly severe neurologic symptoms in her right and left hands that ultimately caused her to be taken off work by Dr. George Balfour on or about December 19, 2008. At the time of her carpal tunnel release surgery in 2007, Plaintiff's duties as Records Supervisor/Movement Coordinator included:

> communicating with inter-facility departments via email, preparing packets for incoming inmates, reviewing incoming inmates' criminal history, answering inmates' requests for information, supervising records clerks, providing training to records clerks, verifying timely release dates for inmates, preparing inmate transfer documentation, researching inmate jail credit, creating inmate jail credit time lines, generating computer data entry of records, placing telephone calls, reading, handwriting notes, typing and use of a mouse.

Doc. # 31 at ¶ 8.

In 2008, as Plaintiff's symptoms were worsening, a Certified Ergonomic Specialist and Field Case Manager made several suggestions to mitigate Plaintiff's condition. The

suggestions included an adjustable keyboard platform and an ergonomic mouse, both of which were provided by Defendant. The Ergonomic Specialist also recommended an ergonomic chair, a headset, and an in-line document holder. The latter items were not provided by Defendant although Plaintiff alleges Defendant had assured Plaintiff that those items would be provided.

About ten months after Plaintiff was removed from work by Dr. Balfour, Plaintiff submitted to a Qualified Medical Examination ("QME") by Dr. Vincent Gumbs, M.D. Dr. Gumbs concluded that Plaintiff's condition was "Permanent and Stationary," and that she could return to work subject to a number of work restrictions that included avoiding repetitive gripping, grasping, pushing, pulling and repetitive typing. Plaintiff was also advised to rest ten minutes every hour to relieve symptoms. Dr. Gumbs also opined that Plaintiff might require a number of medical interventions in the future including medications, braces and further surgeries.

Plaintiff alleges Defendant received Plaintiff's workers compensation notification, including a copy of Dr. Gumbs' QME, and that directly thereafter Plaintiff received notification of her termination. Plaintiff alleges that, at the time of her termination, she was:

> both "qualified and "otherwise qualified" and could have performed the essential functions of her job as Records Supervisor/Movement Coordinator with accommodation. [Plaintiff] successfully could have performed her job with the assistance of, without limitation, the ergonomic chair, head set, and in-line document holder that CCA promised but failed to provide and by being allowed to take hourly breaks, during which she could have read inmate files and performed other non-manual work while resting her hands. [Plaintiff] also would have benefitted from a rolling portable file holder to ease the burden of carrying heavy files.
>
> On or about the date of [Plaintiff's] termination, the California City Correctional Center also had several other open positions for which [Plaintiff] was qualified and could have performed , with or without reasonable accommodations, and into which she could have been reassigned, including the positions of Unit Secretary, Education Secretary and Records Clerk. The positions of Unit Secretary, Education Secretary and Records Clerk involved lighter duties that [Plaintiff's] Records Supervisor/Movement Coordinator position.
>
> At the time of her termination, [Plaintiff] also was qualified for and could

3

> have been reassigned to available Corrections Officer jobs, the essential functions of which she could have performed, with or without reasonable accommodation. Upon hire at CCA, [Plaintiff] completed the new hire academy training, which included Corrections Officers training. CCA secretaries, including [Plaintiff], often crossed over to assume work as Corrections Officers tr garner a higher pay grade. The Corrections Officers positions also involved lighter duties that [Plaintiff's] Records Supervisor/Movement Coordinator position.

Doc. # 31 at ¶¶ 20-22.

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying

4

>pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

Plaintiff's FAC was filed on October 19, 2010. Defendant's instant motion to dismiss was filed on November 1, 2010. Plaintiff's opposition was filed on November 22, 2010, and Defendant's reply was filed on November 29, 2010. The court vacating the hearing date and took the matter under submission as of December 6, 2010.

## DISCUSSION

### I. Plaintiff's First Claim for Relief for Unlawful Discrimination

As in the original complaint, Plaintiff' first claim for relief in the FAC alleges Defendant unlawfully discriminated against Plaintiff on the basis of her disability in violation of Cal. Gov't Code § 12940 *et seq.* The court presumes Plaintiff's first claim for relief is alleged pursuant to section 12940(a). Defendant again challenges the sufficiency of Plaintiff's first claim for relief on the ground that Plaintiff has failed to allege she is a "qualified individual" within the meaning of Green v. State of California, 42 Cal.4th 254 (2007).

To state a *prima facie* claim for unlawful discrimination on account of disability, a plaintiff must allege; (1) that she is disabled within the statutory definition; (2) that she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) that she has suffered a discriminatory employment action on account of the disability. Le Bourgeois v. Fireplace Manufacturers, Inc., 68Cal.app.4th 1049, 1058 (1988). The analytic framework for claims of employment discrimination proceeds in three steps. Id. at 1048. The plaintiff has the initial burden to show a prima facie case of discrimination after which the employer must offer "a legitimate nondiscriminatory reason

5

for the adverse employment decision.  Finally, the plaintiff bears the burden of proving the employer's reason was pretextual.' [Citation.]" Id. (quoting Brundage v. Hahn, 57 Cal.App.4th 228, 236 (1997)).  As was the case in Defendant's prior challenge to Plaintiff's discrimination in the original complaint, Defendant here alleges that Plaintiff has failed to allege that she was a "qualified individual" who was able to perform the essential functions of the job with or without accommodations.  Plaintiff contends the allegations set forth in the FAC sufficiently set forth facts to support the elements of a claim for discrimination such that dismissal is not warranted.  Again, the question for the court to answer is whether Plaintiff's complaint meets the minimum pleading standard with regard to Plaintiff's claim for unlawful discrimination.

While FEHA "prohibits discrimination based on an employee's physical disability," Green, 42 Cal.4th at 262, it "does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability ... where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations." Cal. Gov.Code § 12940(a)(1).  In other words, an "employer may discharge or refuse to hire a person who, because of a disability or medical condition, is unable to perform his or her essential duties even with reasonable accommodation." Ross v. RagingWire Telcom. Inc., 42 Cal.4th 920, 926 (2008).  Again, the court borrows its working definition of "qualified individual" from the Americans With Disabilities Act.  Pursuant to 29 C.F.R. § 1630(m) a "qualified individual" is an individual with a disability who (1) "satisfies the requisite skill, experience, education and other job-related requirements of the employment position," and (2) "who, with or without reasonable accommodation , can perform the essential functions of such position." Id.

There continues to be no question that Plaintiff's FAC adequately alleges facts to

satisfy the first prong of the "qualified individual" analysis.  The focus of the court's analysis is on the question of whether Plaintiff's FAC corrects the deficit identified in the original complaint by adequately alleging that she was/is capable of performing the essential functions of her job with or without reasonable accommodation.  Although the plaintiff's burden in a civil rights case is minimal with regard to the facts that must be alleged to show a *prima facie* case, Caldwell v. Paramount Unified School Dist., 41 Cal.App.4th 189, 197 (2nd Dist. 1995), at least some minimal factual basis to support the conclusion can perform the essential functions of the job with or without accommodation is necessary.  See Vermillion v. Corrections Corp. of America, 2008 WL 4755329 (E.D. Cal. 2008) at *5 (amended complaint alleging factual basis for possible accommodation is sufficient to escape resolution under F.R.C.P. Rule 12(b)(6)).

The court's September 30 Order found Plaintiff's original complaint was deficient in that it was replete with alleged facts to establish her disability, but gave little or no information as to the essential job functions that Plaintiff could perform with or without reasonable accommodations.  Plaintiff's FAC substantially addresses the deficiency that was present in the original complaint.  Plaintiff's FAC alleges what specific functions her job entailed, those being essentially various aspects of an active clerical job involving walking, typing, filing and so on.  While the functions alleged in the FAC and quoted above may not be "essential job functions" in the sense of being expressed in technical terms as might be required in a job description formulated for ADA purposes, the court finds the functions alleged in the FAC suffice to convey the essentials of what Plaintiff's job demanded from a physical perspective.

Plaintiff's FAC also alleges that Plaintiff could have carried out the functions required to perform her job had she been provided certain listed ergonomic equipment, a rolling file cabinet and appropriate hourly rest periods as prescribed by her physician.  The FAC also points with some specificity to other job that were allegedly open at the time and that

7

involved physical activities that were in line with Plaintiff's physical limitations.

Defendants contend that Plaintiff's claim is unsupported because "nowhere is it alleged that any [of the duties Plaintiff listed in her FAC] were the essential job functions of the position or what the essential job functions were." Doc. # 33-1 at 2:16 - 18. Defendant provides no authority for the proposition that "essential job functions" must be pled according to any special formula or standard. As noted above, the court does not expect at this pleading stage that a plaintiff is required to meet any particular standard in articulating the essential functions of his/her job beyond a reasonably detailed description of what he/she actually did on the job. Such pleading, while perhaps not technically complete, is sufficient for purposes of notice pleading inasmuch as it provides a factual basis as to Plaintiff's contentions regarding her job requirements that may be opposed either at trial or in summary judgment.

Similarly, the court finds that Plaintiff's assertion that she could have carried out the functions listed with the accommodations listed is sufficient for pleading purposes because these pleadings also provide sufficient notice of Plaintiff's basis for her discrimination claim so that Defendant may factually rebut those factual bases either at trial or in a summary judgment motion. Defendant's characterization of Plaintiff's claims that she could perform the required job functions with the listed accommodations as "specious" is misplaced. Plaintiff has alleged in reasonably specific terms what her job functions were and has alleged in reasonably specific terms that she could have performed these functions with specified accommodations. For purposes of a motion to dismiss, these allegations are sufficient. Any challenge to the factuality of Plaintiff's allegations must await either trial or motion for summary judgment.

Defendant's motion to dismiss Plaintiff's first claim for relief will be denied.

## II. Claims for Punitive Damages

As was the case with Plaintiff's original complaint, the FAC alleges claims for

punitive damages with respect to each of the four claims for relief.  As was also the case in the original complaint, each of the four claims for punitive damages is alleged in identical language.  The following is quoted from Plaintiff's first claim for relief, but the court can find no significant difference between the claim for punitive damages alleged there and the same claims alleged in each of the other three claims for relief:

> [Plaintiff] is informed and believes that CCA's acts were carried out by its managerial employees, officers, and directors, and were directed or ratified by CCA with a conscious disregard of [Plaintiff's] rights and with the intent to vex, injure and annoy [Plaintiff] such as to constitute oppression, fraud or malice under California Civil Code [s]ection 3294, entitling [Plaintiff] to punitive damages in a sum appropriate to punish and set an example of CCA.  By consciously disregarding known possible accommodations for [Plaintiff], including, but not limited to, job modification, accommodating equipment and alternative positions, Barbara Wagner, Warden of California City Correctional Center, unilaterally terminated [Plaintiff] summarily concluding that, based on [Plaintiff's] work restrictions, she could not perform the essential functions of her job.  This was a misrepresentation, because Ms Wagner, who, as warden, plainly exercised substantial discretionary authority over significant aspects of CCA's business, never once talked to [Plaintiff] or otherwise engaged her in the interactive process to determine whether [Plaintiff] could, in fact, perform the essential functions of her job, with or without accommodations, or whether other positions existed, into which [Plaintiff] could have been reassigned. Similarly, Ms. Wagner's conclusory determination that [Plaintiff] simply no longer could do her job and, therefore, no longer could work for CCA, opressively subjected [Plaintiff] to the ultimate unjust hardship of termination in plain violation of [Plaintiff's] rith to have possible reasonable accommodation considered and to be part of that evaluative process.

Doc.# 31 at ¶ 35.

Civil Code section 3294 provides, in pertinent part:

> '(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.' . . . . .'(c) As used in this section, the following definitions shall apply:'(1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others.'(2) 'Oppression' means subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights.'(3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

9

In its September 30 Order, the court rejected Plaintiff's contention that the pleading standard for claims for punitive damages requires less specificity than is required under Twombly and Iqbal. Pursuant to those cases, the court's September 30 Order dismissed Plaintiff's punitive damages claims for failing to allege any facts that would support the required finding that Defendant's actions were malicious or oppressive. In the instant motion to dismiss Plaintiff's punitive damages claims from the FAC, Defendant asserts two grounds. First, Defendant contends Plaintiff has failed to allege that any "officer, director or managing agent" of Defendant corporation had advance knowledge of, and disregarded authorized or ratified, any act of oppression, fraud or malice as required by California Civil Code § 3294(b). In this regard, Defendant contends that Warden Barbara Wagner is not an officer, director or managing agent of the Defendant corporate entity. Second, Defendant contends that Plaintiff has again failed to allege facts to show any of Defendant's acts were undertaken with malice, oppression or fraud. It does not appear to the court that Plaintiff has set forth any opposition to Defendant's motion to dismiss the punitive damages claims.

The court need not decide whether Plaintiff has adequately alleged that the acts undertaken by Defendant were acts known to "an officer, director or managing agent" because the court finds that the acts alleged do not amount to oppression, fraud or malice. The fact remains that here, as in the original complaint, the allegations set forth in the FAC to justify an award of punitive damages are really nothing more than allegations that Defendant failed to abide by FEHA's requirements coupled with the conclusory allegation that Defendant did so "with conscious disregard for [Plaintiff's] rights and with the intent to vex, injure and annoy [Plaintiff]." Doc. # 31 at ¶35. As the court found with regard to the claims for punitive damages in the original complaint, so here the court finds Plaintiff has failed to allege any facts to indicate an intent on the part of Defendant to vex, injure or annoy that could possibly be found to constitute oppression or malice.

As the court noted in its September 30 Order, it is the express policy of courts

10

deciding discrimination cases that "[p]unitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." Endurance American Specialty Ins. Co. v. Lance, 2010 WL 3619476 (E.D. Cal. 2010) at * 18 (quoting Henderson v. Security Pacific Nat'l Bank, 72 Cal.App.3d 764, 771 (1977). Beyond failing to make a clear case for punitive damages, the court finds Plaintiff has failed to make any case. The court finds Plaintiff has failed to set forth any facts that, if proven, would entitle her to an award of punitive damages. Defendant's motion to dismiss Plaintiff's claims for punitive damages with respect to each of the four claims for relief will be granted. Because the court articulated the shortcomings of Plaintiff's attempt to claim punitive damages in its September 30 Order, and because the FAC does not correct the noted deficiencies, the court concludes further amendment would be futile and is therefore not warranted.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that:

1. Defendant's motion to dismiss Plaintiff's first claim for relief as alleged in the FAC is hereby DENIED.
2. Defendant's motion to dismiss Plaintiff's prayer for punitive damages as alleged in claims one through four of the FAC is hereby GRANTED. Plaintiff's prayer for punitive damages is hereby DISMISSED with regard to all claims for relief alleged in the FAC without leave to amend.

IT IS SO ORDERED.

Dated:     January 12, 2011

CHIEF UNITED STATES DISTRICT JUDGE